236 So.2d 491

**TRUCK SERVICE, INC.**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION.**

No. 50116.

June 8, 1970.

Harold R. Ainsworth, New Orleans, for intervenor-appellant.

Kavanaugh, Pierson & Talley, Marshall D. Brinkley, Baton Rouge, for defendant-appellant.

Kantrow, Spaht, Weaver & Walter, James M. Field, Baton Rouge, for plaintiff-appellee.

SUMMERS, Justice.

Freiler Industries, Inc., a motor common carrier of special commodities, applied to the Louisiana Public Service Commission for authority to transport steel and iron castings, reinforcing bars, angles, channels and beams, wooden patterns for castings, carted bolts, nuts and bushings, bronze bearings, pillar blocks and form pans from the plant site of Dibert, Bancroft & Ross Co., Ltd., near Amite, Louisiana, to all points in the State of Louisiana. Later the application was amended to eliminate "form pans" and to remove destination points east of the Mississippi River for all products except steel reinforcing bars, angles, channels, and beams.

Truck Service, Inc., who holds common carrier authority from the Commission to transport these special products, opposed the application.

After a hearing the Commission granted the certificate, and Truck Service, Inc., appealed the decision to the Nineteenth Judicial District Court. After hearing additional evidence, the Court referred the matter back to the Commission for reconsideration, and the Commission affirmed its decision. The Court then reversed the Commission's decision, and Freiler Industries, Inc., has appealed.

Thus it may be seen that this is a request for limited authority to transport special commodities within the State from a single location—the manufacturing plant of Dibert, Bancroft & Ross Co., Ltd., at Amite, Louisiana.

Dibert is a steel and iron foundry and a steel rolling mill. It was formerly located in New Orleans; but because of limited space there and the need to expand its plant, it has moved its mill to Amite, a small community away from urban centers. Its relocation was also influenced to some extent by the State's program to locate industries in smaller communities, spread employment and avoid industry concentration in urban areas. Dibert's rolling mill plant is the first of its kind in Louisiana.

Customers to be served by Dibert include sugar mills, and the marine, construction, rubber and machinery industries. If this certificate is approved, Freiler will add deliveries within the State to the national service it is already furnishing under an interstate certificate.

Sensing the need for special transportation facilities because Amite is out of the way, and the facilities formerly at hand in New Orleans were no longer available, Dibert entered into a contract with Freiler for these purposes. It is the understanding that Freiler's terminal would be located near the plant and the special equipment required would be held ready to serve Dibert's needs. Freiler, accordingly, invested more than 300 thousand dollars in trucks and trailers which are garaged within

three miles of Dibert's plant. With these facilities Freiler serves Dibert's interstate transportation needs and plans to serve intrastate requirements also.

Testimony at the hearings makes it apparent that Truck Service, Inc., cannot economically maintain a like number of trucks or trailers at Amite for Dibert's exclusive use. Truck Service asserts, however, that its terminals in Baton Rouge and New Orleans are capable of supplying trucks upon short notice and its special equipment is suited to Dibert's needs. Truck Service, Inc., is not authorized to haul interstate, and shipments destined outside the State would, in some instances, be required to be handled by interline connections. Dibert objects to this practice with its products because of the delay it entails.

In an effort to show its special need for the type service Freiler will provide, Dibert's officials say that even while located in New Orleans where truck terminals were nearby the service was often unsatisfactory, delays in shipments and interline connections being unavoidable at times. With Freiler's especially designed accommodations these problems will be avoided. Truckloads combining both intrastate and interstate destinations will be handled by Freiler without interline connections and with the incidental economy to the shipper.

Dibert's officials testified that the special castings and foundry work it produces are often critical items for sugar mills, factories, ships and marine installations. Time of delivery is often vital to the customer's operations. Only Freiler has demonstrated its willingness and ability to fill these special needs.

Though we understand that Truck Service, Inc., is able to provide transportation for Dibert's shipments, there is a subtle, but significant, distinction between the service it is able to supply and that offered by Freiler. Freiler's operation will be dedicated entirely to Dibert's needs, and all of its equipment will be on stand-by located within three miles of Dibert's plant, able to respond to calls within a few minutes. Thus only Freiler can furnish the type service Dibert considers essential to its operation.

On the other hand, because it is not authorized to handle interstate shipments, Truck Service, Inc., cannot economically maintain enough units in Amite to serve Dibert's intrastate shipment only.

Adequacy of existing service is a factor to be considered by the Commission, but adequacy of existing service or the willingness or ability of existing carriers to render the service is not necessarily determinative. I. C. C. v. J. T. Transport Co., Inc., 368 U.S. 81, 82 S.Ct. 204, 7 L. Ed.2d 147 (1961); Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957).

██ There are areas of public convenience and necessity involving special service and unusual requirements, such as Dibert's needs and convenience and the needs and convenience of its customers, where something more than the usual adequate service is indicated. Dibert's is a distinctive operation, and it is entitled to design its transport to suit its needs; and when the need and convenience are supported by the evidence, the law should not stand in the way if the public convenience and necessity are not otherwise jeopardized. We think there is ample evidence in the record to suppport the Commission's finding that a valid and demonstrated public need exists for the certificate it issued.

██ Having arrived at this conclusion, we find it was error for the District Court to reverse that finding and cancel the authorization. It is only where there is a clear showing of abuse of power that the Commission's orders should be set aside by the courts. Nor should a court substitute its judgment for that of the Commission when the order is not arbitrary, capricious or contrary to the evidence. Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, 247 La. 826, 174 So.2d 644 (1965).

For these reasons the judgment appealed from is reversed and set aside, and the order of the Commission is reinstated and made the judgment of this Court.